FILED

'98 MAY -8 PM 3: 13

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

MAY 8 1998

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JIMMY HOOPER, both individually and on behalf of all other similarly situated employees, | } } } } } | |
| | } | CIVIL ACTION NO. |
| Plaintiff, | } } | CV-98-AR-0352-S |
| vs. | } } } | |
| GOLD KIST, INC. and TEAMSTERS & CHAUFFEURS UNION, LOCAL 612, | } } } | |
| Defendants. | } | |

## MEMORANDUM OPINION

The above-entitled action is now before the court on a motion to dismiss or, in the alternative, for summary judgment filed by defendant, Teamsters & Chauffeurs Union, Local 612 ("Union"), on April 8, 1998. The court entered a submission order on that same day and, thereby, deemed the Union's motion as one made pursuant to Rule 56, Fed.R.Civ.P.

Plaintiff, Jimmy Hooper ("Hooper"), alleges that defendant, Gold Kist, Inc. ("Gold Kist"), breached collective bargaining agreements it entered with the Union in 1992, in 1995, and in early 1998 by failing to adhere to the wage schedules contained in those agreements. In a related claim, Hooper also alleges that, as a result of its refusal to confront Gold Kist about this pay disparity, the Union breached its duty of fair representation to union members. Hooper makes both allegations pursuant to section

301 of the National Labor Relations Act, 29 U.S.C. § 185(a) ("NLRA" or "§ 301"). For the reasons set out more fully below, the court concludes that the Union's motion is due to be granted in part and denied in part.

## I. *Pertinent Undisputed Facts*

Hooper began working for Gold Kist as a laborer on October 22, 1984. Compl. at ¶ 5. He continues as an employee with Gold Kist today and works at the company's Feed Mill located in Jasper, Alabama (the "Feed Mill"). *Id.* at ¶¶ 5-6. Hooper is a member of the Union. *Id.* at ¶ 6. At all times relevant to this lawsuit, the Union served as the collective bargaining representative of all employees of the Feed Mill. *Id.*

On or about February 1, 1992, the Union entered into a collective bargaining agreement with Gold Kist on behalf of all Feed Mill employees. *Id.* at ¶ 8. This collective bargaining agreement included a wage schedule which dictated the hourly rate of pay for all Feed Mill employees, including truck drivers. *Id.* at ¶ 9. The Union entered into successive and substantially similar collective bargaining agreements with Gold Kist on or about February 1, 1995, and on or about February 1, 1998. *Id.* at ¶ 8.

According to Hooper, notwithstanding these collective

bargaining agreements, Gold Kist paid, and continues to pay, its truck drivers more than is allowed under the binding wage schedules. *Id.* at ¶ 10. Hooper alleges that, "When this disparate pay rate was addressed by employees in negotiating the terms of each of the collective bargaining agreements in 1992, 1995, and 1998, both Gold Kist officers and union officers informed employees that this matter was not negotiable." *Id.* at 11. On February 13, 1998, Hooper filed this lawsuit, alleging breach of contract against Gold Kist and breach of the duty of fair representation by the Union. *Id.* at ¶ 1.

## II. *Summary Judgment Standard*

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), Fed.R.Civ.P. In addition, the Eleventh Circuit has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). The Union has invoked Rule 56.

### III. *Discussion*

As an initial matter, the court concludes that any and all of Hooper's claims relating to the 1992 and 1995 collective bargaining agreements are due to be dismissed as a matter of law. It is well settled that "claims arising from expired collective bargaining agreements are actionable [only] as unfair labor practices." *Johnson v. Pullman, Inc.*, 845 F.2d 911, 914 (11th Cir. 1988). As a result, such claims fall with the exclusive jurisdiction of the National Labor Relations Board. *Id.* (citing *San Diego Bldgs. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773 (1959)). In other words, "a federal court has jurisdiction over a suit for a violation of a collective bargaining agreement under § 301 only while the agreement is in force." *Id.; see also United Paperworkers Int'l Union v. Int'l Paper*, 920 F.2d 852, 859 (11th Cir. 1991). Therefore, given that this court is without jurisdiction over Hooper's claims regarding Gold Kist's alleged breach of the expired 1992 and 1995 collective bargaining agreements, the Union must necessarily receive summary judgment on his duty of fair representation claims relating to those agreements. *See Parker v. Connors Steel Co.*, 855 F.2d 1510, 1519 (11th Cir. 1988) (explaining that, in hybrid § 301/fair representation action, the two claims are interdependent, and plaintiff must prove both claims to prevail), *cert. denied*, 490

U.S. 1066, 109 S.Ct. 2066 (1989). For the balance of this opinion, the court will address Hooper's claims as if they relate to the 1998 collective bargaining agreement only.

### A. Statute of Limitations

As noted above, Hooper alleges that Gold Kist breached the 1998 collective bargaining agreement by paying its truck drivers at a rate greater than that established by the wage schedule contained in the labor contract. Compl. at ¶¶ 1,7. Hooper also alleges that, because the Union failed to address this pay disparity with Gold Kist, the Union breached its duty of fair representation. Compl. at ¶ 1. Where, as here, an employee combines these two distinct claims into a single lawsuit, the federal courts commonly refer to such cases as "hybrid" § 301/fair representation actions. *Hechler v. Int'l Bhd. of Elec. Workers, AFL-CIO*, 834 F.2d 942, 943 (11th Cir. 1987). Furthermore, as the Union correctly observes, the Supreme Court of the United States and other federal appellate courts have consistently held that the six-month statute of limitations found in § 10(b) of the NLRA applies in hybrid § 301/fair representation actions. *See e.g., DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-70, 103 S.Ct. 2281, 2293-94 (1983); *see also Parker v. Connors Steel* Co., 885 F.2d 1510, 1519 (11th Cir. 1988), *cert. denied*, 490 U.S. 1066, 109 S.Ct. 2066 (1989); *Rogers v. Lockheed-Georgia Co.*, 720 F.2d

1247, 1249 (11th Cir.), *cert. denied*, 469 U.S. 916, 105 S.Ct. 292 (1984).

In an attempt to circumvent the applicable six-month limitations period, Hooper argues, in essence, that this lawsuit is not a typical hybrid § 301/fair representation action. More specifically, Hooper contends that, because his complaint alleges that the Union "conspired" with Gold Kist to breach the 1998 collective bargaining agreement, this action is principally one for breach of contract. According to Hooper, this last fact makes Alabama's six-year statute of limitations for breach of contract claims more appropriate in this case. Hooper's argument is unpersuasive for two reasons. First, all of the authority Hooper uses as support for this proposition is readily distinguishable from the instant case and, therefore, inapposite. For example, in one case he relies upon, *Garcia v. Eidal Int'l Corp.*, 808 F.2d 717 (10th Cir. 1998), the court of appeals declined to enforce the six-month limitations period only because the employer **unilaterally** repudiated the collective bargaining agreement at issue. *Id.* at 722. According to the Tenth Circuit, in such circumstances, "the labor law policies that persuaded the Court in *DelCostello* to adopt the uniform six-month statute of limitation are not applicable." *Id.* Obviously, where, as here, one alleges that his employer and union have **conspired** to breach the

6

collective bargaining agreement, any reliance on *Garcia* to avoid the six-month limitations period is misplaced. Second, and more important, the mere fact that a union may have engaged in wrongdoing that goes beyond its alleged breach of duty does not, as Hooper suggests, obviate the applicability of the six-month limitations period in cases like this one. As one court explained:

> The claim . . . need not be a "classic" hybrid claim. **The six month limitation period is applicable whenever there is a [duty of fair representation] claim.**

*Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 411 (5th Cir.) (emphasis supplied), *cert. denied*, 498 U.S. 895, 111 S.Ct. 244 (1990). Given that Hooper clearly alleges that the Union breached its duty of fair representation, the court concludes that the six-month statute of limitations first announced in *DelCostello* applies with equal force in this case. Having determined the appropriate limitations period, the court will now address whether Hooper's claim regarding the 1998 collective bargaining agreement is timely.

### B. Is Hooper's Claim Timely?

Not surprisingly, the Union contends that Hooper's claim is not timely. As support for this position, the Union points to statements made both in the complaint and in affidavits submitted by Hooper which suggest that he and others were aware of the

7

Union's refusal to confront Gold Kist about the alleged pay disparity in 1995, in 1992, and perhaps earlier. According to the Union, given that Hooper filed this lawsuit on February 13, 1998, these statements demonstrate that his claim accrued years ago and, therefore, falls well outside of the six-month statute of limitations. This argument is not well taken.

It is well settled that "a cause of action accrues under § 301, and the statute of limitations begins to run, when in the exercise of reasonable diligence the claimant knew or should have known of the injury." *Hill v. Georgia Power Co.*, 786, F.2d 1071, 1074-75 (11th Cir. 1986). As the Eleventh Circuit has explained:

> "[T]he timeliness of the suit must be measured from the date on which the employee knew or should have known of the union's final action or the date on which the employee knew or should have known of the employer's final action, whichever occurs later . . . . By final action we mean the point where the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage."

*Id.* at 1075 (quoting *Proudfoot v. Seafarer's Int'l Union*, 779 F.2d 1558, 1559 (11th Cir. 1986)). Generally, when a cause of action accrues is a question of fact. *Samples v. Ryder Truck Lines, Inc.*, 755 F.2d 881, 887 (11th Cir. 1985). However, "in certain instances, the issue can be resolved on a motion for summary judgment." *Hill*, 786 F.2d at 1075. At present, the instant case does not provide that opportunity.

Although the court agrees that the record evidence suggests that Hooper had knowledge that the Union would not address the

alleged pay disparity when it negotiated the 1992 collective bargaining agreement, that fact has little, if any, bearing on whether his claim regarding the 1998 collective bargaining agreement is timely. The 1998 collective bargaining agreement is a separate contract, and, as such, it is unrelated to both the 1992 and 1995 collective bargaining agreements. Thus, any claim relating the 1998 collective bargaining agreement represents a separate cause of action that is distinct from any that exist, or that may have existed, vis-a-vis any prior labor contracts with Gold Kist. The appropriate question, then, is whether Hooper had knowledge that the Union would not address the alleged pay disparity in negotiating the 1998 collective bargaining agreement more than six months before he filed this lawsuit. Viewing the evidence in the light most favorable to Hooper, this court cannot say that, at present, the record unequivocally demonstrates that he had such knowledge. Accordingly, summary judgment is not appropriate on Hooper's claims regarding the 1998 collective bargaining agreement at this time. However, if, after further discovery, it becomes clear that Hooper did have such knowledge, then the court will revisit this decision. In the meanwhile, the Union can take comfort in the fact that, as a result of the court's dismissal of Hooper's claims regarding the 1992 and 1995 collective bargaining agreements, Hooper will not reap any

windfall in damages.

### C. Hooper's Claim for Punitive Damages

In his complaint, Hooper asks the court to award punitive damages to punish the Union for its alleged breach of duty. Compl. at ¶ 16b. The Union argues that such awards are inappropriate in this circumstance. The court agrees. It is well established that, under the NLRA, punitive damages are not available against a union for breach of its duty of fair representation. *See Wilson v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 83 F.3d 747, 754 (6th Cir.) (citing *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 52, 99 S.Ct. 2121, 2127 (1979)), *cert. denied*, ___ U.S. ___, 117 S.Ct. 610 (1996). Indeed, Hooper concedes this point in his response to the Union's motion for summary judgment. Accordingly, the court concludes that Hooper's claim for punitive damages against the Union is due to be dismissed.

### D. Hooper's Claim for Mental Anguish

Hooper also asks this court to award him damages for mental anguish and emotional distress occasioned by the Union's alleged wrongdoing. Compl. at ¶ 16b. In response, the Union argues that, because such damages are awarded in hybrid § 301/fair representation actions only in very unusual circumstances not present here, this claim should be dismissed. This argument is

10

well taken.

According to the First Circuit, "emotional distress damages should be awarded in fair representation suits only in 'exceptional cases of misconduct.'" *Cantrell v. Int'l Bhd. of Elec. Workers, Local 2021*, 32 F.3d 465, 468 (10th Cir. 1994). Moreover, other federal "[c]ourts have found extreme and outrageous misconduct only in exceptional circumstances, such as where the plaintiff was subjected to 'constant chanting, jeering, and gesturing, a constant rain of nuts, bolts, and screws, intentional cigarette burns, vandalism of cars and lockers and vulgarities about his wife.'" *Id.* (citing *Bloom v. Int'l Bhd. of Teamsters, Local 468*, 752 F.2d 1312, 1315 (9th Cir. 1984). A review of Hooper's complaint reveals that he makes no such allegations, and he makes no showing of outrageous conduct on the part of the Union in defense of this claim. In the absence of any such allegations or showing, the court necessarily concludes that Hooper's claim for mental anguish and emotional distress damages are due to be dismissed. As the Union correctly observes, Hooper cannot "be allowed to casually toss in a demand for [such damages] at his Complaint's tail end, having made no allegations to support that claim." Mem. In Support of Mot. for Summ. J. at 9.

This conclusion remains unchanged despite Hooper's contention that, given the embryonic character of this proceeding, he has not

had an adequate opportunity to discover facts to support his claim for mental anguish and emotional distress. Common sense suggests that where, as here, one seeks compensation for mental and emotional injuries, substantial discovery is unnecessary because, as the alleged "victim," he should have sufficient personal knowledge of the events giving rise to those injuries either to satisfy the liberal notice pleading standards or to create a jury question, unless, of course, one's purported injuries include amnesia. Indeed, this court fails to understand at all how protracted discovery can better enable a plaintiff to recall the sort of extreme behavior that merits an award of damages for mental anguish. Therefore, as nothing in the record suggests that Hooper's memory is impaired, the mere fact that this proceeding is still in its initial phases does not preclude summary judgment on his claim for mental and emotional distress.

### E. Hooper's Claim for Attorneys' Fees

Lastly, Hooper's complaint asks the court to award him attorneys' fees as a part of the prayed for relief. Compl. at ¶ 16c. Pointing to the "American Rule," the Union argues that such relief is inappropriate in the absence of specific statutory or contractual fee-shifting authority. More specifically, the Union argues that, because the NLRA does not authorize awards for attorneys' fees, this claim should be dismissed. The court

12

disagrees.

>In a very recent decision, the Sixth Circuit explained:
>
>>In a hybrid § 301 suit, the employer and the union are liable "according to the damage caused by the fault of each." (Citation omitted). **When a union breaches its duty of fair representation, a member can recover expenses, including attorneys' fees and costs, incurred in pursuing his claims against the employer.** (Citation omitted). These expenses are the damages flowing from the union's breach; if the union had fulfilled its duty, the member would not have had to spend his own resources. **Therefore, these damages do not violate the traditional American Rule regarding attorneys' fees.** (Citation omitted). The American rule only prevents the union member from recovering resources spent in pursuing his claims against the union.

*Vencl v. Int'l Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 426 (6th Cir. 1998) (emphasis supplied). In the absence of controlling authority to the contrary, the court finds the Sixth Circuit's reasoning to be persuasive. Consequently, with respect to Hooper's claim for attorneys' fees, the Union's motion for summary judgment is due to be denied.

## IV. *Conclusion*

The court will enter a separate and appropriate order in accordance with this memorandum opinion.

DONE this __8__ day of May, 1998.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

13