IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
99 JAN 21 PM 4:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JAN 21 1999

JIMMY HOOPER, ROBERT McELRATH,
EZRA SANFORD, FRANK TRAVIS, FRED
NICHOLS, TROY MARCHBANKS,
STEVE TURNER and JIMMY UPTAIN,

    Plaintiffs,

vs.                                       CASE NO. CV-98-J-352-S

GOLD KIST INC., TEAMSTERS
AND CHAUFFEURS UNION
LOCAL 612,

    Defendants.

## MEMORANDUM OPINION

    Currently pending before the court are the defendant Gold Kist's motion for summary judgment (doc. 62), and the defendant Teamsters and Chauffeurs Union's (hereinafter referred to as "Union") second motion for summary judgment (doc. 60), to which the plaintiffs and defendants have filed memoranda and exhibits in support of their respective positions.

    The plaintiffs allege that the defendant Gold Kist breached the collective bargaining agreement it entered with the Union in February, 1998 by failing to adhere to the wage schedule contained in that agreement.[1] (See complaint at 3). In a related claim, the plaintiffs

---

[1] The plaintiffs' complaint actually alleges three separate collective bargaining agreements, from February, 1992, February, 1995 and February 1998. However, the Hon. Judge William Acker granted the defendant Union's motion to dismiss or, in the alternative, for summary judgment in part, ruling that no genuine issue of material fact exists with respect to any

also allege that the Union breached its duty of fair representation by refusing to confront Gold Kist about this pay disparity. *Id.* These claims are both brought pursuant to the National Labor Relations Act, 29 U.S.C. §185(a).

## FACTS

The plaintiffs are employed as laborers by defendant Gold Kist at its feed mill in Jasper, Alabama. (Brief of Gold Kist at 3). The plaintiffs are members of Teamsters Local 612, which represents the employees of the feed mill and the truck drivers. Plaintiff Hooper has worked for Gold Kist since 1984. (Complaint at 2, amended complaint at 2). At all times relevant to this lawsuit, the defendant Union served as the exclusive and recognized collective bargaining representative for all employees of the feed mill. *Id.*

The Union alleges that Gold Kist has not changed the manner in which it compensates its employees since 1988. At least since that time the collective bargaining agreements between the Union and Gold Kist have each included a wage schedule as "Exhibit A." (Affidavit of Wayne Fisher and Exhibits thereto.) Each of these wage schedules has included the language "[i]n addition to rates set forth in the above wage schedule, an additional ten cents (10¢) per hour will be paid to all feed mill employees in lieu of the incentive plan." (See Exhibit A to defendant Union's motion to dismiss or, in the alternative, for summary judgment filed April 8, 1998).

---

and all of the plaintiff's claims relating to the 1992 and 1995 collective bargaining agreements. See Order dated May 8, 1998. The plaintiffs filed an amended complaint June 17, 1998.

2

Plaintiffs allege that defendant Gold Kist has breached the terms of each of these contracts by paying tractor trailer drivers and truck drivers pursuant to "undisclosed terms outside the collective bargaining agreements." (Complaint at ¶ 10, amended complaint at ¶ 7, 10). Plaintiffs refer to this as a "verbal 'side agreement.'" Plaintiff's brief in opposition at 2. Plaintiffs further allege that the Union violated its duty to fully and fairly represent its members by entering this verbal agreement, and thus acted in bad faith. Amended complaint at ¶ 13. Plaintiffs' also state that the defendant Gold Kist's refusal to grant plaintiffs the right to negotiate, file a grievance and/or arbitrate this issue is a breach of the collective bargaining agreement. Amended complaint at ¶ 14.

On May 8, 1998, the Hon. William Acker granted summary judgment for the defendants on the plaintiffs' claims regarding contracts prior to the February, 1998 agreement because those prior agreements were expired and no longer in force. Order, May 8, 1998. Thus, this court is faced only with issues as they relate to the February, 1998 collective bargaining agreement. The same court order also dismissed the claims for mental anguish and emotional distress of plaintiff Jimmy Hooper, but not those claims of the subsequently added plaintiffs. *See* Order of July 20, 1998.

Defendant Gold Kist alleges that, in the mid-1970's, due to a strike by all employees at this feed mill including the truck drivers, Gold Kist and the Union entered an oral agreement for an incentive plan for the truck drivers. Memorandum in support of Gold Kist's motion for summary judgment at 5 (hereinafter referred to as "Gold Kist"), plaintiffs

3

brief in opposition at 2. Pursuant to this agreement, the truck drivers can earn the hourly rate or an incentive rate, whichever is higher. Gold Kist at 5. To date, this agreement has never been reduced to writing. *Id.* While a separate incentive plan was established, also pursuant to an oral agreement, for the other feed mill employees during this same time frame, the defendants allege that the plan did not work well. Thus, in 1980, the Union, on behalf of the feed mill employees, negotiated an agreement with Gold Kist whereby these employees would give up their incentive pay in return for additional pay of ten cents an hour. *Id* at 6. This agreement has appeared as note 2 of Appendix A, the wage schedule, in every collective bargaining agreement since 1980. *Id* at 6-7; Union's memorandum in support at 6-7.

Before the collective bargaining agreement here at issue was entered, the topic of incentive pay was negotiated by the parties, however, no such pay plan was agreed to by the parties. Gold Kist at 9-11. All of the plaintiffs were present for the ratification vote on the contract for the current collective bargaining agreement. Only five of the 32 members of the bargaining unit present voted against acceptance of the contract as it was, without an incentive pay plan. *Id.* at 11. Thus, at least three of the plaintiffs had to have voted for acceptance of the contract without an incentive pay plan. Additionally, plaintiff Fred Nichols recommended to the feed mill employees that they vote to ratify the proposed 1998 Agreement. Union's Reply to Brief in Opposition of Plaintiffs at 5 (hereinafter referred to as "Union's Reply"), citing depo. of Nichols at 134.

4

## DISCUSSION

The Court has read all of the motions for summary judgment, the responses thereto and all replies which were filed as well as all of the evidence and depositions filed in support of said motions. On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

### Standard for Summary Judgement

Summary judgment can be entered on a claim only upon a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The burden then shift to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). The plaintiff must present "affirmative evidence' to establish a genuine dispute of material fact in order to defeat the summary judgment motion, by showing that evidence exists upon which a finder of fact can reasonable find in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-253, 255-58 (1986).

While all evidence and factual inferences are to be viewed in a light most favorable to the nonmoving party, *Rollins v. TechSouth, Inc.* 833 F.2d 1525, 1529 (11th Cir. 1987); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact," *Anderson*, 477 U.S. at 248. A fact is not material unless it is an essential element of the nonmoving party's case. *Id.*

### Hybrid §301/Fair Representation Action

In this action, the plaintiffs allege that Gold Kist has breached the 1998 collective bargaining agreement by paying its truck drivers at a rate greater than that established by the wage schedule attached to the contract as Exhibit A. Plaintiffs allege that this breach constitutes a violation of §301 of the Labor Management Relations Act, 29 U.S.C. §185. Amended complaint at ¶¶ 7, 10, 14. The plaintiffs also allege that because the Union has failed to address the disparity in pay rate, the Union has breached its duty of fair representation. Amended complaint at ¶ 13. Where, as here, plaintiffs allege a violation of these two distinct causes of action in the same suit, the case is commonly referred to as a "hybrid" §301/fair representation action. *Hechler v. Int'l Bhd. Of Elec. Workers, AFL-CIO*, 834 F.2d 942, 943 (11th Cir. 1987).

Plaintiffs must establish both that the company breached the collective bargaining agreement and that the union violated its duty of fair representation in order to prevail in a

6

hybrid §301/duty of fair representation action. *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1519 (11th Cir. 1988), *cert. denied*, 490 U.S. 1066, 109 S.Ct. 2066 (1989); *see also Hines v. Anchor Motor Freight*, 424 U.S. 554, 570-571 (1976)(stating that the plaintiff has the burden to demonstrate a breach by each of the defendants). Thus, if no breach of the duty of fair representation occurred by defendant union, then whether defendant Gold Kist breached the collective bargaining agreement cannot be reached by this court.

> Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on §301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. "Yet the two claims are inextricably interdependent. 'To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.' " *Mitchell*, 451 U.S., at 66-67, 101 S.Ct., at 1565-1566 (Stewart, J., concurring in the judgment), quoting *Hines*, 424 U.S., at 570-571, 96 S.Ct., at 1059. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

*DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290 (1983).[2]

This court's role in examining whether the defendant Union breached its duty of fair representation is "highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *Air Line Pilots Assn. Int'l v.*

---

[2]Although case law states that the court must dispose of the claims against the Union first in a "hybrid" action, *see e.g. United Parcel Service v. Mitchell*, 451 U.S. 56, 66-67, 101 S.Ct. 1559, 1565-66 (1981), this court finds that here, due to the plaintiffs framing of their claims, unless Gold Kist breached the contract by paying the truck drivers more than the stated rate, there can be no breach of the duty of fair representation.

7

*O'Neill*, 499 U.S. 65, 78, 111 S.Ct. 127, 1135 (1991). The United States Supreme Court has recognized that:

> The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.... Variations acceptable in the discretion of bargaining representatives ... may well include differences based upon such matters as the ... nature of the work [and] the time at which it is done....

*Ford Motor Co. v. Huffman*, 345 U.S. 330, 338-339, 73 S.Ct. 681, 686 (1953). Recognizing this tenet, the Second Circuit Court of Appeals has stated that a "union's reasoned decision to support the interests of one group of employees over the competing interests of another group does not constitute arbitrary conduct." *Spellacy v. Airline Pilots Assn.-International*, 156 F.3d 120, 129 (2nd Cir. 1988)(citations omitted). The plaintiff must establish, to prevail on its claim for violation of the Union's duty of fair representation that the Union acted in a manner that was "discriminatory, dishonest, arbitrary, or perfunctory. *Hechler*, 834 F.2d at 943 (quoting *DelCostello*, 462 U.S. at 164, 103 S.Ct. at 2290).

## Breach of Contract Claim

The plaintiffs are suing the Union and their employer Gold Kist for paying a group of employees more that the contract allows. Plaintiffs allege in their amended complaint that they have lost income because the truck drivers make more money that the contract specifies. Amended complaint at ¶ 15. This court cannot find any logic in this argument. Assuming this court ordered the defendants to void their verbal contract and pay the truck drivers solely

the hourly wage specified in the contract, the plaintiffs here would not earn any more money.

The wage schedule set out as Appendix A to the contract lists per hour amounts that the defendant employer must pay each particular class of employees. No where can this court find justification for the plaintiffs' proposition that paying an employee more than a required amount violates a contract, nor do plaintiffs cite any legal support for this novel contract interpretation. This court also cannot find any basis for the plaintiffs proposition that the verbal contract between Gold Kist and the truck drivers is contrary to the collective bargaining agreement.

The law in Alabama states that to establish a breach of contract, a plaintiff must establish (1) the existence of a contract; (2) performance by the plaintiff (3) defendant's failure to perform; (4) resulting damage to the plaintiff. *Southern Medical Health Systems, Inc. v. Vaughn,* 669 So.2d 98, 99 (Ala.1995)(citations omitted). Clearly, the collective bargaining agreement is a contract to which the plaintiffs have performed. However, the facts here do not lend themselves to this court finding a failure by the defendants to perform. Even if this court could find that by paying a certain group of employees greater than the hourly wage the defendant Gold Kist breached this contract, the court is still unable to find any damage to the plaintiffs from this alleged breach.[3]

---

[3]Surely the plaintiffs are not arguing that if defendant Gold Kist decided to give all employees an additional ten cents an hour raise, over and above what is called for in the wage schedule, that this would be a breach of the contract.

9

The three sections of the collective bargaining agreement plaintiffs claim were breached are as follows:

> 4. The Company by this Agreement recognizes the Union as the sole and exclusive bargaining agent for all employees in the Bargaining Unit.
>
> 5. There shall be no individual agreements between the Company and an employee in conflict with this Agreement.
>
> 6. It is distinctly understood and agreed by all parties ... that any and all previous agreements whether oral or written, by and between the Company and the Union are superseded and replaced by this Agreement.

Agreement at 1.

The plaintiffs do not allege that Gold Kist recognized some bargaining unit other than the Union. The plaintiffs also do not allege that Gold Kist entered a separate agreement, with an individual employee, in conflict with the agreement. Rather, plaintiffs want this court to hold that this section can be construed to read that the company cannot entered a verbal agreement with the Union providing additional benefits to a particular class of employees. Paragraph 5 of the agreement simply does not state this. The third paragraph in dispute, that this agreement supercedes all prior agreements, also has not been breached by Gold Kist. Nothing in this paragraph prevent the defendants from entering a new verbal agreement in conjunction with each new collective bargaining agreement.[4]

---

[4]This court has reviewed numerous cases where an opposite result was reached by the courts when reviewing a side agreement to a collective bargaining agreement. However, each of those cases were distinguishable. Clearly, this was not a secret agreement, plaintiffs have known about the agreement for twenty years. Every contract between the parties since the 1970's has had the same verbal side agreement made between the union and Gold Kist. Nor did this case

As previously discussed, note 2 to the wage schedule states that "all feed mill employees" will be paid an additional ten cents per hour "in lieu of the incentive plan." Exhibits to plaintiffs' brief, Exhibit 2 at 23. Clearly, the parties to this contract agreed that the employees, including the plaintiffs, would earn ten cents an hour more than the wage schedule establishes in return for not having an incentive plan. The plaintiffs apparently want this court to order the defendants to renegotiate the contract that at least some of these plaintiffs voted to approve to obtain what they could not obtain through the collective bargaining process.

## Breach of Duty of Fair Representation Claim

Plaintiffs argument is also troubled for another reason. In order to prove its claim that the Union breached its duty of fair representation, the plaintiffs allege that the Union had knowledge that the truck drivers are paid incentive pay when it is greater than their hourly pay. *See, e.g.*, plaintiffs' brief in opposition at 13. However, plaintiffs then state, to prove their breach of contract claim, that had "all the terms and rates of pay been properly disclosed, presented and negotiated, at issue is whether the Union would have, in good faith, properly negotiated a greater rate of pay for all employees, including the plaintiffs." *Id* at 20.

---

vary the provisions of the collective bargaining agreement. Finally, plaintiff did not rely on any of the cases the court reviewed which held that secret, unratified oral side agreements which lessened the employees rights constituted breaches of the collective bargaining agreements at issue in each case. *See e.g. Merk v. Jewel Food Stores* 945 F.2d 889 (7th Cir. 1990); *Central States Southeast & Southwest Areas Pension Fund v. KraftCo., Inc.* 799 F.2d 1098 (6th Cir. 1986). In fact, the plaintiffs never alleged that the union membership failed to ratify this side agreement.

11

This is quite the impossibility: Since the Union knew about the variance in the truck drivers rate of pay, it breached its duty of fair representation, but if the Union **had known** it could have negotiated a better rate of pay for plaintiffs.

The plaintiff must establish, to prevail on its claim for violation of the Union's duty of fair representation that the Union acted in a manner that was "discriminatory, dishonest, arbitrary, or perfunctory. *Hechler*, 834 F.2d at 943 (quoting *DelCostello*, 462 U.S. at 164, 103 S.Ct. at 2290); *Air Line Pilots Assn. Int'l*, 499 U.S. at 67, 111 S.Ct. at 1130. *See also Grooms v. Wiregrass Electric Cooperative, Inc.*, 877 F.Supp. 602, 610 (M.D. Ala. 1995). The court finds that the standard for whether a union has violated its duty of fair representation has not been met in this case.

The United States Supreme Court has long recognized that a union has the statutory duty to "serve the interest of all members without hostility or discrimination towards and, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Breininger v. Sheet Metal Workers Int'l*, 493 U.S. 67, 73, 110 S.Ct. 424, 429 (1989)(quoting *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910 (1967)). Courts will consider union behavior arbitrary "only if, in the light of the factual and legal landscape at the time of the union's actions, the union' behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Airline Pilots Assn., Int'l* 499 U.S. at 67, 11 S.Ct. at 1130 (internal citations omitted).

Here, the plaintiffs make the mere bald allegation that the Union somehow acted in bad faith because no incentive pay agreement was reached. They do not allege that any set of facts which gives rise to an inference of discrimination by the Union in its negotiating separate compensation for truck drivers and non-truck drivers. Appendix A to the collective bargaining agreement, which at least some of the plaintiffs voted to adopt, clearly recognizes that different jobs are compensated at different rates. Likewise, the plaintiffs do not allege, nor can the court find any evidence that the Union acted arbitrarily. The Union has raised the issue of incentive pay for the mill employees during the negotiations leading to the current contract. Union's Reply at 3. This court can find no allegations by the plaintiffs that the Union engaged in dishonest or perfunctory behavior. The plaintiffs even raised the issue of the disparate pay agreement with the Union, as opposed to their Union Local. The International Brotherhood of Teamsters responded that, while such a compensation scheme, while possibly misguided, is not discriminatory or illegal. Exhibit 8 to plaintiffs' exhibits.

Similarly, Gold Kist alleges that incentive pay for the mill employees was attempted, however the employees were unable to earn incentive pay because this particular mill has a higher cost per ton production average than the company's average. Gold Kist at 11. Instead of an incentive plan which possibly would not allow the plaintiffs to ever earn incentive pay, the employees received a thirty cent per hour pay increase for the first year of the collective bargaining agreement, regardless of production. *Id.* Additionally, plaintiff Fred Nichols, when asked during his deposition, stated that he discussed the proposal to create and

13

incentive or production bonus plan and the company did not agree to that proposal. Union's Reply at 3, citing to depo. of Nichols at 36. This is different from plaintiffs' allegation that the Union did not bargain with the company regarding incentive pay. *See also* Union's memorandum in support of second motion for summary judgment at 2.

Plaintiffs also allege that the Union breached its duty of fair representation by ignoring their grievances and failing to take any action on their behalf. Plaintiffs' brief in opposition at 22. However, as discussed below, the plaintiffs undisputedly did not file a grievance regarding this collective bargaining agreement, before coming to court.

### Failure to Exhaust Administrative Remedies

Plaintiffs also allege repeatedly in their brief that they have been trying to follow the grievance procedure regarding the truck drivers incentive pay since 1979, but then state "at issue is whether a written contract disclosing the truckers higher rate of pay would have been approved by all the employees who voted." *Id.* Yet the plaintiffs have known that the trucker drivers earn more than their specified hourly rate of pay for twenty years.[5] *See e.g.*

---

[5]While plaintiffs knowledge of this verbal agreement for approximately twenty years raises a statute of limitations problem, the court finds that due to its rulings on other issues the question of whether the statue of limitations has run does not need to be addressed. Furthermore, this court finds that the statute of limitations here acts as a two edged sword against the defendants. The defendant Gold Kist states that "it has been common knowledge that the drivers receive the greater of incentive pay or their hourly rates in performing their duties. Therefore, Plaintiffs' claims accrued long before the August 13, 1997, date that marks the six month statute of limitations." Brief of Gold Kist at 8. However, this defendant states in the same brief that "Gold Kist and the Union entered into this verbal side agreement after the 1998 contract was signed." *Id.* at 5. Seeing as the collective bargaining agreement itself states that all previous agreements whether oral or written, by and between the company and the Union are superseded and replaced by this Agreement, Agreement at 1, the defendants have no choice but to consider

14

Affidavit of Marc Cain (1989 grievance; 1992 tried to negotiate feed mill incentive), and Affidavit of Fred Nichols (1975 negotiated for feed mill incentive; 1979 gave up incentive pay for additional ten cents per hour; 1980 attempted to file a grievance; since 1980 tried to negotiate wages competitive to truck drivers; 1990 spoke with Paul Tillman about filing a grievance) Exhibits to Plaintiffs brief in Opposition, Exhibit 3; (1979 grievance); *Id* at Exhibit 5 (1993 letter to Gold Kist's Vice President of Human Resources); *Id* at Exhibit 8 (1994 letter from International Brotherhood of Teamsters stating no legal claim for discrimination exists)[6].

The 1998 collective bargaining agreement contains a grievance procedure and arbitration policy which requires employees to attempt to exhaust their administrative rights before filing a suit in federal court. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 653, 85 S.Ct. 614, 617 (1965); *Hayes v. Reynolds Metals Co.,* 769 F.2d 1520, 1522 (11th Cir. 1985), *reh'g denied, en banc,* 782 F.2d 180 (11th Cir. 1986) and *Samples v. Ryder Truck Lines, Inc.,* 755 F.2d 881, 885-886 (11th Cir. 1985) all recognize that federal labor policy requires employees to use contract grievance procedures. Where a collective bargaining agreement

---

the side agreement at issue here to have been entered since this collective bargaining agreement was entered and hence, there is no statute of limitations problem.

[6]In the June, 21, 1994 letter from the International Brotherhood of Teamsters to plaintiff Fred Nichols, submitted by plaintiffs as Exhibit 8 of their Exhibits to Plaintiffs Brief in Opposition, Mark Junod, Warehouse Trade Division Representative writes "[i]n your case, the company tailored a program to all drivers. This is both legal and common. The company did not make a similar offer to non-driver employees .... However misguided, such a policy or lack thereof is not illegal."

contains an arbitration clause, those procedures must be exhausted before an employee files a § 301 suit. *Vaca v. Sipes*, 386 U.S. 171, 184-185, 87 S.Ct. 903, 913-914 (1967).

Plaintiffs here do not allege that they have exhausted their contractual remedies. Plaintiff Hooper's attempt to file a grievance regarding these claims occurred after this lawsuit was filed. Union's Reply at 4, citing Hooper depo. at 20. Because no grievance was filed by any of the plaintiffs until after this suit was filed, the Union could not have breached its duty of fair representation in not representing the plaintiffs in their grievance against the Union. Furthermore, the collective bargaining agreement provides that either side to a dispute may refer the matter to an impartial arbitrator. Agreement at ¶ 95-97, Exhibit 2 to Exhibits to plaintiffs' brief. The plaintiffs make no allegation that these provisions were utilized.

## CONCLUSION

The motion for summary judgment by defendant Gold Kist is hereby **GRANTED**. The second motion for summary judgment by defendant Union is hereby **GRANTED**.

**DONE** and **ORDERED** this the 21st day of January, 1999.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE